CASE 15.—ACTION BY JOHN B. NASH AGAINST THE
CHESAPEAKE & OHIO RAILWAY COMPANY AND
OTHERS.—November 24, 1909.

## Chesapeake & Ohio Ry Co. v. Nash

Appeal from Campbell Circuit Court.

A. S. BERRY, Circuit Court.

Judgment for plaintiff, defendant appeals.—Reversed.

1.  Master and Servant—Injuries to Servant—Negligence.—
    Where a carpenter force was employed by a railroad com-
    pany to go from place to place on the road, and lived in
    camp cars while en route, the engineer, in charge of an
    engine and cars detached from the camp cars, while at a
    station en route to a place where carpenter work was to
    be done, could reasonably anticipate that some one in the
    camp cars would be moving about, or proceeding from car
    to car, and that the shock of coupling under such circum-
    stances might cause injury; and a member of the force was
    not negligent as matter of law in attempting to go from
    one car to another at such time, especially where he knew
    that the engine and cars had been detached, if he received
    no warning that they were approaching.

2.  Master and Servant—Injuries to Servant—Negligence of Mas-
    ter.—The engineer in charge of the detached engine and
    cars owed the duty under the circumstances of giving warn-
    ing of the return of the engine to couple, and the ringing
    of the bell, being the warning ordinarily given in such cases,
    was the only warning to which the occupants of the camp
    cars were entitled, and it was not necessary to blow the
    whistle or send to the camp cars to inform the occupants
    that the engine was returning.

WORTHINGTON, COCHRAN & BROWNING and GALVIN &
GALVIN for appellant.

GEORGE DONIPHAN and JAMES C. WRIGHT for appellee.

Chesapeake & Ohio Ry. Co. v. Nash.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

Appellee, John R. Nash, instituted this action against appellant, Chesapeake & Ohio Railway Company, John T. Dwyer, and Albert A. King to recover damages for personal injuries. The jury found for Dwyer and King, but returned a verdict in appellee's favor for $10,000 against the railroad company, and from the judgment based thereon the latter appeals.

The facts of the case are as follows: In the month of January, 1907, there was a washout on the line of appellant's railway between Glenn Park and Melbourne, in Campbell county, Ky. On the morning of January 23, 1907, a freight train, consisting of an engine and eight cars, in charge of Albert A. King, conductor, left K. C. Junction, Covington, Ky., for the point of the washout. At Newport, Ky., the train picked up six camp cars, containing the road carpenter force; appellee Nash being one of the force. The train next stopped at Dayton, Ky., and laid a hand car on a flat car and got the balance of the men. About two miles east of Dayton, at a point called D. N. Cabin, the train again stopped and picked up 50 or 60 laborers. It then proceeded to a station called Brent. Here the engine and some of the cars were uncoupled for the purpose of doing some switching, and the conductor went to the telegraph office to receive orders. The engine and cars engaged in the switching went ahead about 65 car lengths, and the camp cars were left standing upon the main line. At the time of the accident appellee was in one of these cars. After completing the work of switching, the engine, with two or three material cars, returned for

the purpose of securing the camp cars, which had been left on the main line, and then proceeding to the train's destination. The camp cars were used to carry the force of carpenters from place to place on appellant's road, for the purpose of doing such repair work as might be necessary. These cars were ordinary box freight cars, with doors in each end. One of them was known as the "kitchen car."

The carpenters made their home in these camp cars while being transported from point to point on the railroad. There were no platforms at either end, and in passing from one car to another it was necessary to step over the coupling apparatus. At the time of the accident, appellee had been in appellant's employ for some three or four months. He was boarded and transported from place to place in the camp cars. He was paid by appellant for the time taken in carrying him the same as if he were actually at work. Appellee knew that the train had stopped at Brent on the main line, and that the engine and a few cars had left the balance of the cars standing thereon. He also knew that they had not reached their destination, and that the engine had to return and get the camp cars before they proceeded on their way. Just before the accident the appellee passed from one car to another and got a pair of gum boots. He then started a second time for the kitchen car, for what purpose does not appear. While walking to the end of the car, and when very near the door, the engine was backed up and against the train. The shock caused him to be thrown forward. He caught the jamb of the open door, and his body was swung out. His head was caught between two cars, and he was seriously and permanently injured. Appellant's witnesses testify that the bell on the engine was be-

ing rung as the engine approached the camp cars. On the other hand, appellee and others, who were in position to hear, testified that they did not hear the ringing of the bell.

· It is first insisted by appellant that the court erred in failing to give a peremptory instruction in its favor. in this connection it is argued that it was not shown that any rule of the company required those in charge of the engine and cars under such circumstances to give warning of their approach. This may be true; but negligence does not always depend upon whether a rule of the company has or not been violated. Sometimes the company's rules may require a greater or less degree of care than the law requires. So the company may be negligent in certain respects, where there is no rule covering such a case. But it is contended that the company had a right to presume that appellee and others on the camp cars were in a place of safety, and was not required to anticipate that any one of them would be in a position so dangerous that the ordinary coupling of a car, without great force or violence, would injure any one. Then, too, it is further claimed that appellee was himself guilty of contributory negligence in placing himself in a position of danger when he had reason to believe that the engine and the cars thereto attached would return and get the camp cars.

In discussing these questions it must be borne in mind that the appellee and other members of the carpenter force were making their home in the camp cars. That they would move about in the cars was not an unreasonable expectation. That being the case, we can not say, as a matter of law, that appellee was guilty of contributory negligence in attempting to go from one car to another, especially in view

of the fact that he knew that the engine and cars had been detached from the camp cars, and claims to have received no warning that they were then approaching. Our conclusion is that the engineer and conductor in charge of the engine and detached cars could reasonably anticipate that some one in the camp cars would be moving about, or proceeding from one car to the other, and that the shock of coupling under such circumstances might cause injury. It follows, therefore, that the probability of injury was such as to impose upon the company the duty of giving warning of the return of the engine. The case was, therefore, one for the jury, and the court did not err in refusing to award appellant a peremptory instruction.

The court in its instructions authorized a recovery by appellee if the railway company, by its agents and servants in charge of the locomotive and train of cars, at the time and place described in the proof, without timely warning and with negligence, moved its locomotive so that it came against the cars at a time when appellee was rightfully upon one of said cars and exercising ordinary care for his own safety. Thus the court left to the jury to determine what was a timely warning. The ringing of the bell, however, in our opinion, was sufficient warning, under the circumstances of this case. Had the engine whistled, it would not have apprised appellee of the fact that the engine, with the detached cars, was then returning for the purpose of coupling. Nor do we think it was necessary for the conductor or engineer to send some one to the camp cars to inform those occupying them that the engine was returning. While it is true that appellee and others engaged in a similar work were

Chesapeake & Ohio Ry. Co. v. Nash.

not like ordinary trainmen, in that they were required to be on the lookout for the return of the engine, yet they knew they had not reached their destination, and that the engine would return. In view of the position those on the camp cars thus occupied, it seems to us that the only warning to which they were entitled was the one ordinarily used for that purpose, to wit, the ringing of the bell. Upon the next trial, the court, in addition to the instructions given, will instruct the jury to the effect that the timely ringing of the bell as the train came back was a timely warning of the approach of the engine, within the meaning of the first instruction.

For the reasons given, the judgment is reversed, and cause remanded for a new trial consistent with this opinion.